CARICO v. WILMORE, County Jailer.

(District Court, W. D. Virginia. January 12, 1892.)

1. UNITED STATES MARSHALS—POWER TO ARREST WITHOUT WARRANT—VIOLATION OF REVENUE LAWS.
Under Rev. St. § 788, giving to United States marshals and their deputies the powers possessed by sheriffs of the states, a deputy marshal in Virginia has power to arrest without a warrant a person who, in his presence, has in possession whisky for the purpose of selling the same without payment of the internal revenue tax, in violation of Rev. St. U. S. § 3452.

2. SAME—EVIDENCE—REMOVAL OF CAUSES.
A deputy United States marshal, having been informed that two men were selling whisky in the neighborhood in violation of the revenue laws, met them a few minutes later in the highway, carrying a keg. He asked what was in the keg, and and they replied, "A little whisky." One of them said, "Who the hell are you?" and he replied, "A deputy marshal." The former then said that no deputy marshal should arrest him, and drew his pistol, whereupon the deputy shot and killed him. Held, that the deputy was justified in presuming that they had the whisky for the purpose of selling the same in violation of the revenue laws; and that whether it was his intention to arrest them, or to make further inquiries as to whether they had been engaged in violating the revenue laws, he was acting within the scope of his authority; and, a prosecution having been commenced against him in the state court for murder, he was entitled to have the same removed to the federal circuit court.

At Law. Petition for a writ of habeas corpus by Joseph H. Carico against W. D. Wilmore, jailer of Smyth county, Va.

Section 643 of the Revised Statutes of the United States provides as follows:

"Sec. 643. When any civil suit or criminal prosecution is commenced in any court of a state against any officer appointed under or acting by authority of any revenue law of the United States now or hereafter enacted, or against any person acting under or by authority of any such officer, on account of any act done under color of his office, or of any such law, or on account of any right, title, or authority claimed by such officer or other person under any such law, * * * the said suit or prosecution may, at any time before the trial or final hearing thereof, be removed for trial into the circuit court next to be holden in the district where the same is pending, upon the petition of such defendant to said circuit court, and in the following manner: Said petition shall set forth the nature of the suit or prosecution, and be verified by affidavit; and, together with a certificate signed by an attorney or counselor at law of some court of record of the state where such suit or prosecution is commenced, or of the United States, stating that, as counsel for the petitioner, he has examined the proceedings against him, and carefully inquired into all the matters set forth in the petition, and that he believes them to be true, shall be presented to the said circuit court, if in session, or, if it be not, to the clerk thereof at his office, and shall be filed in said office. The cause shall thereupon be entered on the docket of the circuit court, and shall proceed as a cause originally commenced in that court. * * * When the suit is commenced in the state court by * * * *capias*, or by any other similar form of proceedings by which a personal arrest is ordered, he (the clerk of the circuit court) shall issue a writ of *habeas corpus cum causa*, a duplicate of which shall be delivered to the clerk of the state court, or left at his office by the marshal of the district, or his deputy, or some person duly authorized thereto, and thereupon it shall be the duty of the state court to stay all further proceedings in the cause, and the suit or prosecution, upon delivery of such process, or leaving the same as aforesaid, shall be held to be removed to the circuit court, and any further proceedings, trial, or judgment therein in the state court shall be void; and, if the defendant in the suit or prosecution be in actual custody on mesne process therein, it shall be the duty of the marshal, by virtue of the writ of *habeas corpus cum causa*, to take the body of the defendant into his custody, to be dealt with in the cause according to the law and the order of circuit court, or, in vacation, of any judge thereof. * * *"

On the 18th day of December, 1891, in the vacation of this court, Joseph H. Carico, the petitioner, presented his petition to the district judge, reciting that he had been arrested upon the warrant of a justice of the peace of the state of Virginia charging him with murder, and was in the custody of the jailer of Smyth county, Va., on said charge, and averring that there was no murder, but that the killing was committed in his own necessary self-defense, while engaged in the discharge of the duties of his office as deputy marshal in arresting a violator of the internal revenue laws of the United States, and praying that a writ of *habeas corpus cum causa* issue directed to W. D. Wilmore, the said jailer of Smyth county, Va. Upon said petition a writ of *habeas corpus* was granted as therein prayed, and served upon said W. D. Wilmore, jailer of Smyth county, Va., upon which writ the following return was made:

"*To the Hon. Judge Paul, Judge of the Circuit Court of the United States for the Western District of Virginia:* W. D. Wilmore, keeper of the jail of

Smyth county, Virginia, to whom the within writ is directed, has now here before the court the body of Joseph H. Carico, therein named, as thereby commanded; and I certify that the cause of the detention of the said Joseph H. Carrico is a warrant of commitment directed to me, a copy of which is hereto annexed, marked 'Exhibit A,' and the proceeding of the county court of Smyth and the commonwealth of Va., marked 'Exhibit B,' and made part and parcel of this return.

"*Dated this* 23*d day of December*, 1891.

"W. D. WILMORE, Jailer of Smyth Co., Va."

The hearing of the case was continued to the 8th day of January, 1892, when, on the hearing, the following facts were shown: That the petitioner was a deputy marshal; that on the 11th day of December, 1891, he was on his way from Independence, Grayson county, Va., with a United States prisoner in his custody, taking said prisoner to the jail of Smyth county, Va.; that on his way he learned that some men were selling liquor unlawfully in the neighborhood, and he was told that he would probably meet said men on the road; that from what he learned he supposed these men to be the two Nelsons; that after receiving this information he had not gone more than a mile when he met two men on the highway who proved to be the two Nelsons; that one of them was carrying a keg, and that he said to them, "It is reported to me that you are selling liquor, and I want to see what you have got there in that keg, and who are you?" that the man with the keg answered, "A little whisky;" that the deceased said to petitioner, "Who the hell are you?" and that petitioner replied, "I am a deputy marshal;" that the deceased then said, "No damned deputy marshal shall arrest me," and drew his pistol; that at this point the petitioner, having his pistol in his hand, fired and killed the deceased. Upon this showing of the facts, counsel for the respondent contended that the state court alone had jurisdiction of the case, and insisted that petitioner should remain in the custody of the jailer of Smyth county for trial in the state court.

*F. S. Blair*, for petitioner.

*A. M. Dickenson*, for respondent.

PAUL, District Judge. "Officers who, by virtue of their offices, are conservators of the peace, have, at common law, the right to arrest without warrant all persons who are guilty of a breach of the peace, or other violation of criminal law, in their presence." 1 Amer. & Eng. Enc. Law, 734. The Revised Statutes of the United States provide as follows:

"Sec. 3452. Every person who shall have in his custody or possession any goods, wares, merchandise, articles, or objects on which taxes are imposed by law, for the purpose of selling the same in fraud of the internal revenue laws, or with design to avoid the payment of the taxes imposed thereon, shall be liable to a penalty of five hundred dollars, or not less than double the amount of taxes fraudulently attempted to be evaded."

A violation of this statute would be a misdemeanor. Code Va. § 3879. If committed in the presence of a sheriff, the offender could be

arrested without a warrant. *Muscoe* v. *Com.*, 86 Va. 443, 10 S. E. Rep. 534; and Davis, Crim. Law, 402.

It is clearly proved that James Nelson, the deceased, and his brother, Reuben Nelson, who was with him at the time he was killed, had been engaged only a few hours before in selling liquor unlawfully; that Reuben Nelson, when asked by the petitioner what he had in the keg which he was carrying, replied that he had "a little whisky." These men having been engaged in selling whisky during the day, 10 or 15 miles from their home, and acknowledging that they had whisky in a keg at the time they were accosted by the deputy marshal, the fair presumption is that they had said whisky "for the purpose of selling the same in fraud of the revenue laws;" thus bringing their offense within the provisions of section 3452 of the Revised Statutes of the United States. It is further shown by the evidence that the petitioner had been informed, but a few minutes before he met the deceased and his brother, that unlawful sales of liquor had been made that day at a cornshucking in that immediate neighborhood, and on the road which the petitioner was traveling with his prisoner, and that he would probably meet the men who were selling the liquor; that when he met the two Nelsons he supposed (the evidence shows that he was correct) that they were the persons who had been selling the liquor unlawfully. So, seeing the keg which one of them carried, and being informed that it contained whisky, the petitioner was authorized to arrest these persons without warrant for a violation of the provisions of section 3452 of the Revised Statutes of the United States. The court is of the opinion that the offense described in that statute was being committed in the presence of the petitioner, and, if he had arrested the men who were doing it, he would have been performing his duty and acting in the line of his authority; for section 788 of the Revised Statutes of the United States provides that "the marshals and their deputies shall have in each state the same powers, in executing the laws of the United States, as the sheriffs and their deputies in such state may have by law in executing the laws thereof." This statute invests the marshal and his deputies in this district with all the powers, common-law and statutory, which a sheriff and his deputies have in the state of Virginia; and, as we have already seen, a sheriff or his deputy in Virginia has power to arrest without warrant for an offense committed in his presence.

In addition to the common-law powers of a sheriff in the state of Virginia, the Code of Virginia (section 3988) makes it the duty of the sheriff to give information of the violation of any penal law to the attorney for the commonwealth, whose duty it is to institute a prosecution in such case. This duty imposed upon the sheriff necessarily carries with it the implied power to investigate, inquire into, and ascertain if an offense has been or is being committed, in order that he may report the same to the proper prosecuting officer. The petitioner testifies that it was his purpose in stopping the Nelsons, and inquiring their names and what they had in the keg, to ascertain if they were violators of the law; and that, if they were, he might take the proper steps to have them

prosecuted. In view of the duty imposed upon a sheriff by the Code of Virginia, and the necessary and incidental power conferred by the imposition of that duty, and the marshal, by section 788 of Revised Statutes of the United States, having the same power, the petitioner had a right, when he suspected the Nelsons of violating the revenue laws of the United States, to make of them, or other persons, all proper inquiries as to such violations of law; and being a conservator of the peace, like a sheriff, it was his duty to do so, and in doing so he was acting in the line of his duty. So the court is of the opinion that, under the facts presented in this case, whether it was the purpose of the petitioner to arrest the deceased and his brother, or to make inquiries of them with a view of ascertaining whether they were or had been engaged in violating the internal revenue laws, he was acting within the scope of his authority, and that the circuit court of the United States has jurisdiction of the prosecution instituted against him in the state court, and that the petitioner has a right to have the same removed into the circuit court for trial. Counsel for the petitioner claims that, under the evidence, he is entitled to an absolute discharge. The court does not care at this time to enter into a discussion of the facts as shown by the evidence on which this demand is based. For the present it contents itself with saying that it deems it its duty not to discharge the petitioner. He will be allowed bail in the sum of $1,000 to appear before the United States circuit court at its next regular term at Abingdon.